# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| WES JOSEPH PERTGEN, | Case No.: 3:19-cv-00534-MMD-CSD |
| Plaintiff | **Report & Recommendation of United States Magistrate Judge** |
| v. | |
| ISIDRO BACA, et al., | Re: ECF Nos. 83, 90 |
| Defendants | |

This Report and Recommendation is made to the Honorable Miranda M. Du, Chief United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

Before the court is Plaintiff's motion for summary judgment. (ECF Nos. 83, 83-1 to 83-3, 87.) Defendants filed a response as well as their own motion for summary judgment. (ECF Nos. 90, 90-1 to 90-9, 91, 91-1 to 91-9.)[1] Plaintiff filed a reply in support of his motion (ECF No. 97), and a response to Defendant's motion (ECF No. 100). Defendant's filed a reply in support of their motion. (ECF No. 102.)

After a thorough review, it is recommended that Defendants' motion be granted in part and denied in part, and Plaintiff's motion be denied.

## I. BACKGROUND

Plaintiff is an inmate in the custody of the Nevada Department of Corrections (NDOC), proceeding pro se with this action pursuant to 42 U.S.C. § 1983. (First Amended Complaint

---

[1] The substance of the motion and response is identical.

(FAC), ECF No. 25.) The events giving rise to this action took place while Plaintiff was housed at Northern Nevada Correctional Center (NNCC) and Ely State Prison (ESP). (*Id.*)

The court screened Plaintiff's FAC and allowed him to proceed with due process claims against Curtis Kerner and Lisa Walsh. Plaintiff alleges that on January 22, 2017, another inmate, Carly Henry, sucker punched Plaintiff. Plaintiff told a guard he tripped and broke his nose and went back to his bunk, but the guard subsequently told him to go to the infirmary. Plaintiff did so, and was ultimately taken to the hospital for treatment. Plaintiff alleges that Sergeant Miller wrote a false disciplinary report, giving his opinion about how Plaintiff's injury occurred. Then, on January 24, 2017, Officer Vest threatened Plaintiff to get him to plead guilty to the charge of fighting, but Plaintiff refused. On January 31, 2017, Vest found Plaintiff guilty of fighting and sanctioned him to full restitution without conducting a disciplinary hearing. Plaintiff appealed the disciplinary finding, and he was granted a re-hearing.[2]

Plaintiff avers that the re-hearing was originally scheduled to take place on March 29, 2018, but Plaintiff complained he was not served with the notice of charges (NOC), and the hearing was postponed. On April 10, 2018, he was provided a copy of the original notice of charges and preliminary hearing papers from January 2017. Sergeant Kerner then commenced the new disciplinary hearing on May 30, 2018. Plaintiff claims that Kerner told him to "shut the f*** up." He avers that Kener denied Plaintiff's request to show the video evidence, which Plaintiff claims would have proved his version of events. Kerner also refused to allow Plaintiff to give a statement or say anything in his defense. Kerner found Plaintiff guilty based on the false

---

[2] The factual allegations regarding Miller's and Vest's conduct are included for background purposes only as Plaintiff was not permitted to proceed with claims against Miller or Vest.

account in the NOC. Plaintiff was sanctioned to "split" restitution, but he was still required to pay all of the restitution as he was originally punished.

Then, Plaintiff appealed Kerner's guilty finding from the rehearing via the grievance process, but Walsh denied his grievance because she misunderstood it to be a duplicate of his grievances regarding the original guilty finding. He submitted another grievance, which was also denied by Walsh. As such, Walsh allowed the guilty finding and sanction to stand.

Both parties move for summary judgment as to the due process claims against Kerner and Walsh.

## II. LEGAL STANDARD

The legal standard governing this motion is well settled: a party is entitled to summary judgment when "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Cartrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)). An issue is "genuine" if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A fact is "material" if it could affect the outcome of the case. *Id*. at 248 (disputes over facts that might affect the outcome will preclude summary judgment, but factual disputes which are irrelevant or unnecessary are not considered). On the other hand, where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *Anderson*, 477 U.S. at 250.

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted); *see also Celotex,* 477 U.S. at 323-24 (purpose of summary judgment is "to isolate and dispose of factually unsupported claims"); *Anderson,* 477

U.S. at 252 (purpose of summary judgment is to determine whether a case "is so one-sided that one party must prevail as a matter of law"). In considering a motion for summary judgment, all reasonable inferences are drawn in the light most favorable to the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citation omitted); *Kaiser Cement Corp. v. Fischbach & Moore Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986). That being said, "if the evidence of the nonmoving party "is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-250 (citations omitted). The court's function is not to weigh the evidence and determine the truth or to make credibility determinations. *Celotex*, 477 U.S. at 249, 255; *Anderson*, 477 U.S. at 249.

In deciding a motion for summary judgment, the court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.'… In such a case, the moving party has the initial burden of establishing the absence of a genuine [dispute] of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rest., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party cannot establish an element essential to that party's case on which that party will have the burden of proof at trial. *See Celotex Corp. v. Cartrett*, 477 U.S. 317, 323-25 (1986).

If the moving party satisfies its initial burden, the burden shifts to the opposing party to establish that a genuine dispute exists as to a material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party need not establish a genuine

4

1 dispute of material fact conclusively in its favor. It is sufficient that "the claimed factual dispute

2 be shown to require a jury or judge to resolve the parties' differing versions of truth at trial."

3 *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987)

4 (quotation marks and citation omitted). The nonmoving party cannot avoid summary judgment

5 by relying solely on conclusory allegations that are unsupported by factual data. *Matsushita*, 475

6 U.S. at 587. Instead, the opposition must go beyond the assertions and allegations of the

7 pleadings and set forth specific facts by producing competent evidence that shows a genuine

8 dispute of material fact for trial. *Celotex*, 477 U.S. at 324.

9 **III. DISCUSSION**

10 **A. Facts**

11       Plaintiff was housed at NNCC from June 2011 until he was transferred to ESP on January

12 2, 2018. He remained at ESP until March 3, 2021, when he was transferred to another NDOC

13 facility. (ECF No. 90-1 at 3-4.)

14       Plaintiff was charged with a G6 for fighting by Sergeant Miller on January 22, 2017. The

15 evidence supporting the charge is listed as the officer's reports and video footage. Sergeant

16 Miller's report of violation in the NOC states that he was notified by another correctional officer

17 that there was an inmate in the housing unit, identified as Plaintiff, with "a busted up nose."

18 Miller began to review the camera system to determine if the inmate slipped and fell or if there

19 was an altercation. Sergeant Miller reviewed the video footage and his report in the NOC

20 describes his observations, including that Plaintiff and his cellmate, Henry, were engaged in a

21 verbal altercation; Plaintiff was instigating Henry; Henry walked away two times; and when he

22 returned, Plaintiff began to push Henry, and Henry pushed Plaintiff back, and then Plaintiff is

23 seen standing and holding his nose; Plaintiff walked toward the washroom and then exits the

unit. Sergeant Miller concluded that both inmates "engaged in mutual combat/fighting due to [Plaintiff] punching inmate Henry in the upper torso area and inmate Henry responding by punching [Plaintiff] in the face." Plaintiff required treatment outside the prison. (ECF No. 90-4 at 2.)

Hearing Officer David Vest found Plaintiff guilty of fighting and sentenced Plaintiff to restitution (specifically, "ALL" restitution) based on Miller's report. (ECF No. 90-4 at 3-4; ECF No. 90-5.)

Plaintiff appealed the disciplinary finding through the grievance process, and on September 7, 2017, NNCC Warden Baca upheld the grievance and found that the disciplinary charge should be re-heard. (ECF No. 90-6.)

Plaintiff received copies of the original January 22, 2017 NOC on April 10, 2018. (Pl. Decl., ECF No. 97 at 27 ¶ 9.)

Kerner was the hearing officer for the re-hearing on May 30, 2018. Plaintiff entered a plea of not guilty to the G6 charge for fighting. The summary of disciplinary hearing form states that Plaintiff was asked and did not request a witness. The form indicates Plaintiff made the following statement: "This never transpired as the sergeant says I was trying to calm my cellie down he just went off and sucker punched me." Kerner found Plaintiff guilty based on Sergeant Miller's report of violation from the NOC, and this time Plaintiff was sanctioned to "split" restitution. (ECF No. 90-4 at 7-10; ECF No. 97 at 81-86.)

Pursuant to NDOC's regulations, an inmate may appeal a disciplinary finding of guilt to the warden or his/her designee via the grievance process outlined in Administrative Regulation (AR) 740 within 10 calendar days. (ECF No. 90-3 at 22-23.)

On June 2, 2018, Plaintiff submitted a first level grievance, number 2006-30-67276, stating that he was appealing the disciplinary re-hearing on May 30, 2018. (ECF No. 97 at 45-47.) On August 9, 2018, Walsh issued an improper grievance memorandum stating that his first level grievance was a duplicate of a first level grievance already granted as per grievance 2006-30-45584 on September , 2017, by Warden Baca (this is the appeal of the original guilty determination by Vest). (ECF No. 97 at 43.)

On September 12, 2018, Plaintiff filed a second first level grievance where he again specifically noted it was a "disciplinary appeal concerning a[ ] disciplinary *rehearing* that was at ESP on *5-30-18* regarding Disc. OIC # 420598[.]" In that appeal, Plaintiff said the witnesses he requested pre-hearing and his request to see the video of the January 22, 2017, incident were denied, and he was not able to present his defense. (ECF No. 90-7 at 3-5; ECF No. 97 at 39-41, emphasis added.)

On November 1, 2018, Walsh issued another improper grievance memo rejecting grievance 2006-30-67276 because the "OIC [offense in custody] … discussed in [Plaintiff's] grievance was previously granted in grievance #2006-30-45584." (ECF No. 90-7 at 2; ECF No. 97 at 37.) Again, grievance 2006-30-45584 was Plaintiff's appeal of the original disciplinary finding by Vest.

**B. Fourteenth Amendment Due Process and Disciplinary Hearings**

The Fourteenth Amendment provides, "[n]o State shall … deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend XIV, § 1. To invoke its protections, an inmate "must establish that one of these interests is at stake." *Wilkinson v. Astrue*, 545 U.S. 209, 221 (2005). Once the plaintiff has established one of these interests is at stake, the

court's analysis turns to whether the inmate suffered a denial of adequate procedural protections. *Biggs v. Terhune*, 334 F.3d 910, 913 (9th Cir. 2003) (citations omitted).

It is undisputed Plaintiff was sanctioned to restitution and therefore a property interest was implicated in connection with the disciplinary action taken against him Plaintiff. (*See* ECF No 90 at 5:9-10 ("Kerner found Pertgen guilty and sanctioned Pertgen with restitution."); ECF No. 90 at 9:1-4 ("Inmates have a constitutionally protected property interest in their inmate accounts.").) The court will now address whether he was denied applicable procedural protections.

"The Supreme Court established in *Wolff v. McDonnell* that there are procedural due process rights that a prisoner must be afforded in the context of a prison disciplinary proceeding prior to being deprived of a protected liberty interest." *Melnik v. Dzurenda*, 14 F.4th 981, 985 (9th Cir. 2021) (citing *Wolff*, 428 U.S. 539, 555-72 (1974)).

"Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff*, 428 U.S. at 556 (citation omitted). Instead, when an inmate faces disciplinary charges, due process requires that the inmate receive: (1) written notice of charges at least 24 hours before his disciplinary hearing, so he may prepare his defense; (2) a written statement by the hearing officer of the evidence relied upon and the reasons for taking disciplinary action; (3) the right to call witnesses in his defense, when permitting him to do so would not be unduly hazardous to institutional safety or correctional goals; and (4) legal assistance if the inmate is illiterate or the issues presented are legally complex. *Id.* at 556.

///

///

**C. Kerner**

Plaintiff's claims against Kerner are based on allegations that: (a) Kerner did not allow Plaintiff to review, and Kerner declined to review, the video of the January 22, 2017 incident; (b) Kerner did not allow Plaintiff to call Sgt. Miller as a witness; (c) Kerner did not allow Plaintiff to make a statement in his defense; and (d) Kerner sanctioned him to split restitution, but he was ultimately made to pay the entire amount of restitution as he was originally sanctioned (instead of it being split between Plaintiff and the other inmate).

Plaintiff makes several other arguments that are unavailing that the court will address before proceeding regarding the above-items.

First, Plaintiff argues he was never given a preliminary hearing as is required by NDOC's regulations. While NDOC's regulations may provide for a preliminary hearing, this is not a protection required by the *Constitution*. *Russell v. Lumitap*, 31 F.4th 729, 742 (9th Cir. 2022) (citation omitted) (no section 1983 liability for merely acting contrary to prison policy).

Second, Plaintiff appears to argue that he was not given sufficient written notice of charges before the disciplinary re-hearing, but he concedes that he received a copy of the January 22, 2017, NOC for fighting on April 10, 2018, well in advance of the May 30, 2018, disciplinary re-hearing. (*See* ECF No. 90-7 at 4.)

Third, Plaintiff's briefing contains various arguments regarding the notice of charges and guilty finding being based on Sergeant Miller's report, which Plaintiff claims was false. However, the court already concluded in the screening order that Plaintiff does not have a due process right to be free from a false report. (ECF No. 30 at 7:18-19.)

Plaintiff had to kite to get the forms after his disciplinary proceeding. To the extent that this can be construed as arguing he did not get a written statement by the hearing officer of the

evidence relied upon and the reasons for taking the disciplinary action, he admits that he received

that information after he sent his kite.

### 1. Video Footage

Plaintiff maintains that he asked Kerner to see the video of the January 22, 2017, incident, and Kerner refused. Plaintiff then asked Kerner to review it himself, and Kerner also refused that request. (Pl. Decl., ECF No. 97 at 27 ¶ 12.) Defendants argue that Plaintiff did not ask to present the video at the re-hearing, and even if he had requested the video, it was not available at the time of the re-hearing. (ECF No. 90 at 12:1-13.)

*Wolff* held that an "inmate facing disciplinary proceedings should be allowed to … present documentary evidence in his defense when permitting him to do so w[ould] not be unduly hazardous to institutional safety or correctional goals." *Wolff*, 418 U.S. at 566. "If a prisoner must be allowed to present evidence in his defense, it necessarily follows that he must have some right to prepare for that presentation." *Melnik v. Dzurenda*, 14 F.4th 981, 985 (2021). "With no access to the evidence that will be presented against him, a prisoner could neither build a defense nor develop arguments and evidence to contest the allegations at the disciplinary hearing." *Id*.

As such, the right to "'present documentary evidence' in the prisoner's own defense must generally include the ability to obtain that documentary evidence in the first place." *Id*. at 986 (quoting *Wolff*, 418 U.S. at 566). "Similarly, if a prisoner is to be able to respond to evidence presented against him, as a general proposition he should be allowed to know what it is and to examine it, unless there is reason to the contrary." *Id*.

"A prisoner's right to access and prepare evidence for a disciplinary hearing is not unlimited or unfettered." *Id*. "It may be limited by prison officials if they have a 'legitimate

penological reason.'" *Id.* (quoting *Koenig v. Vanelli*, 971 F.2d 422, 23 (9th Cir. 1992)). "If granting a prisoner access to the requested evidence would 'be unduly hazardous to institutional safety or correctional goals,' access may be denied." *Id.* at 986-87 (quoting *Wolff*, 418 U.S. at 566). "The penological reason must be legitimate, though, not merely pretense or pretext. The denial of access may not be arbitrary as '[t]he touchstone of due process is protection of the individual against arbitrary action of government.'" *Id.* at 987 (quoting *Wolff*, 418 U.S. at 558).

"Prison officials may be required to provide an explanation when they deny a prisoner access to evidence, either in the administrative record or through testimony in court if the denial is challenged." *Id.* (citing *Zimmerlee v. Keeney*, 831 F.3d 183, 187 (9th Cir. 1987); *Ponte v. Real*, 471 U.S. 491, 497-500 (1985)). "Without such explanation, a prison official's decision to deny access would effectively be unreviewable by the courts." *Id.* (citing *Ponte*, 471 U.S. at 498-500).

In *Melnik*, the Ninth Circuit concluded the inmate had a constitutional right to see the envelopes that were the evidence being used against him in his disciplinary proceeding when there was no legitimate penological reason cited that justified denial of his access. *Id.* at 988.

Here, the only evidence Kerner relied upon in finding Plaintiff guilty was Sergeant Miller's report, which in turn relied on the video of the incident between Plaintiff and his cellmate. Therefore, under *Wolff* and *Melnik*, Plaintiff had a right to review the video being used against him unless there was a legitimate penological reason cited that justified denial of his access.

Preliminarily, there is a genuine dispute of material fact as to whether Plaintiff requested to review the video at the re-hearing. Even if Plaintiff did request to review the video at the re-hearing, Defendants argue there was a legitimate penological reason for denying that request: the video evidence was unavailable.

Defendants submit a declaration from NDOC's current Warden, Nethanjah Breitenbach. (ECF No. 90-9.) He states that all video surveillance footage at NNCC is accessible through an internal cloud server for up to three weeks to one month from the date of the footage. Unless the video is retrieved, it will be deleted after three weeks to one month, and after this point, it is irretrievable. (*Id.* ¶ 4.) Footage is often retrieved when related to investigation of an incident, such as when an inmate faces disciplinary charges, and it is stored separately under the Investigation Report (IR) number, either in NOTIS, on an institutional server, NNCC shared drive, or in institutional files. (*Id.* ¶ 5.) Warden Breitenbach reviewed NOTIS and the institutional records for this IR number from January 22, 2017, but was unable to locate the footage. (*Id.* ¶ 6.) He states that it does not appear the incident footage was retrieved and stored under the applicable IR number: IR-2017-NNCC-000179. If the footage was not retrieved and stored under the IR number, it would have been deleted after three weeks to one month from the date of the incident, or sometime near February 22, 2017. (*Id.* ¶ 7.) From this, Warden Breitenbach concludes there was no video footage available for the inmate or the hearing officer to review at the disciplinary rehearing on May 30, 2018. (*Id.* ¶ 8.)

It is undisputed that Sergeant Miller reviewed the video footage of the incident between Plaintiff and his cellmate on or around the date of the incident: January 22, 2017. (ECF No. 90-4 at 2.) His observations of the video footage were used by Vest to find Plaintiff guilty the first time. Warden Breitenbach acknowledges that footage is often retrieved when related to investigation of an incident, such as when an inmate faces disciplinary charges, and so it should have been retrieved and stored. While this guilty finding was overturned and a new hearing ordered, NDOC was clearly on notice at that time that the video footage was relevant to Plaintiff's disciplinary proceedings. Warden Breitenbach does not personally know whether the

12

footage was stored, but assumes it was not because he was unable to locate it in connection whit Defendants' motion.[3]

Importantly, there is no declaration from defendant Kerner stating that he did not allow Plaintiff to review the video footage at the re-hearing because it did not exist at the time of the May 30, 2018, disciplinary re-hearing. It is *possible* this was the case, but that fact has not been established.

In sum, there are genuinely disputed facts regarding whether Plaintiff requested to review the video footage at the re-hearing, and if he did, whether the video was unavailable. Therefore, Plaintiff's and Defendants' motions should be denied insofar as Plaintiff claims that his due process rights were violated because he was not allowed to review the video footage at the re-hearing.

**2. Witnesses**

Plaintiff maintains he asked to call Sergeant Miller as a witness, but Kerner denied this request.

Defendants argue that Plaintiff was afforded the opportunity to call witnesses because the summary of disciplinary form from the rehearing indicates that Plaintiff did not request any witnesses.

Preliminarily, there is a genuine dispute of material fact as to whether Plaintiff requested to call a witness.

---

[3] Plaintiff intimates in his briefing that he would like to address alleged spoliation of the video footage, but he has not yet filed a motion for spoliation sanctions under Federal Rule of Civil Procedure 37(e) which applies to the loss of electronically stored information that should have been preserved in anticipation of litigation where a party failed to take reasonable steps to preserve that information and it cannot be restored or replaced.

Defendants argue that even if Plaintiff did ask to call Sergeant Miller as a witness, Kerner could have declined for legitimate penological reasons: Miller's testimony would have been cumulative of his report and due process did not require Kerner to allow Plaintiff to cross-examine Miller.

The right to call witnesses in a prison disciplinary proceeding is a qualified right. It is "necessarily circumscribed by the penological need to provide swift discipline in individual cases." *Ponte v. Real*, 471 U.S. 491, 495 (1985). The right "is additionally circumscribed by the very real dangers in prison life which may result from violence or intimidation directed at either other inmates or staff." *Id.* An inmate's right to call witnesses can be denied if granting the request would be "unduly hazardous to institutional safety or correctional goals." *Wolff*, 418 U.S. at 556.

"Jail officials need not provide inmates an unfettered right to call witnesses, but they must make the decision whether to allow witnesses on a case-by-case basis, examining the potential hazards that may result from calling a particular person." *Serrano v. Francis*, 345 F.3d 1071, 1079 (9th Cir. 2003) (citing *Mitchell v. Dupnik*, 75 F.3d 517, 525 (9th Cir. 1995)).

The disciplinary hearing officer should "state its reasons for refusing to call a witness, whether it be for irrelevance, lack of necessity, or the hazards presented in individual cases," *Wolff*, 418 U.S. at 556, "either by making the explanation a part of the 'administrative record' in the disciplinary proceeding, or by presenting testimony in court if the deprivation of a 'liberty' interest is challenged because of that claimed defect in the hearing." *Ponte,* 417 U.S. at 497. "[A]s long as the reasons are logically related to preventing undue hazards to 'institutional safety or correctional goals,' the explanation should meet the due process requirements as outlined in *Wolff*." *Id*.

Defendants argue it is sufficient that the rationale for not allowing Miller to be called as a witness be articulated in these proceedings *by counsel*, citing *Ponte*, 471 U.S. at 497. That was not the holding in *Ponte*. The Court said: "*prison officials* may be required to explain, in a limited manner, the reason why witnesses were not allowed to testify[.]" *Ponte*, 471 U.S. at 497 (emphasis added). "[T]hey [referring to prison officials] may do so either by making the explanation a part of the 'administrative record' in the disciplinary proceeding, *or by presenting testimony in court* if the deprivation of a 'liberty' interest is challenged because of that claimed defect in the hearing." *Id*. (emphasis added). "In other words, the *prison officials* may choose to explain their decision at the hearing, or they may choose to explain it 'later.'" *Id*. (emphasis added).

If the choice is made to disclose the reason for disallowing a witness at some later point, then *Ponte* seems to require "testimony" from a "prison official." Counsel's statement made in argument in a motion for summary judgment is insufficient.

Nevertheless, there still remains a genuine dispute of fact as to whether Plaintiff requested to call a witness in the first place, and for this reason, both Plaintiff's and Defendants' motions should be denied insofar as Plaintiff claims his due process rights were violated when he was denied the right to call Miller as a witness.

**3. Statement in his Defense**

Plaintiff claims he was restricted in his ability to make a statement in his defense at the hearing, asserting that Kerner repeatedly cut him off and made him answer only a single question with a yes or no, and without the ability to elaborate on the facts.

Defendants argue that *Wolff* does not include a right to "present a defense." (ECF No. 102 at 5.) Defendants contend that in any event, the summary of disciplinary hearing form reflects that Plaintiff made a short statement in his defense.

That an inmate has a right to present a defense is implicit in the guarantees of *Wolff*. "Part of the function of notice is to give the charged party a chance to marshal the facts *in his defense* and to clarify what the charges are, in fact." *Wolff*, 418 U.S. at 564 (emphasis added). "We are also of the opinion that the inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence *in his defense*[.]"*Id.* at 565 (emphasis added). It is true that right is not unfettered, and he may do so only when it "will not be unduly hazardous to institutional safety or correctional goals." *Id*. Prison officials "have the necessary discretion to keep the hearing within reasonable limits," but that does not mean the inmate has no right to present his defense. While there may be legitimate penological reasons for not letting an inmate call a witness or present documentary evidence or provide a lengthy statement, the hearing officer cannot wholly prevent the inmate from stating a defense.

There is a genuine dispute of material fact as to whether Plaintiff was permitted to present a defense, including witnesses, the video of the incident, or a statement, or whether Kerner unnecessarily restricted him in this regard in the absence of legitimate penological reasons for doing so. Therefore, summary judgment should be denied insofar as Plaintiff claims his due process rights were violated because Kerner precluded him from presenting any defense.

**4. Some Evidence**

Plaintiff alleges that Kerner only relied on Sergeant Miller's false report in finding him guilty.

While an inmate does not have a constitutionally guaranteed right to be free from being falsely or wrongly accused, "some evidence" must support the prison's disciplinary decision. *Superintendent Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455 (1985). "[T]he relevant question is whether there is *any* evidence in the record that *could* support the conclusion reached by the disciplinary board." *Id*. at 455-56 (citation omitted, emphasis added).

"The Federal Constitution does not require evidence that logically precludes any conclusion but the one reached by the disciplinary board." *Id*. at 457. "Instead, due process in this context requires only that there be some evidence to support the findings made in the disciplinary hearing." *Id*. The court is "not to make its own assessment of the credibility of witnesses or reweigh the evidence." *Cato v. Rushen*, 824 F.2d 704, 705 (9th Cir. 1987) (citation omitted).

Here, Kerner's guilty finding was based on Sergeant Miller's report, which contained his observations following his review of the video of the incident. The court is not permitted to reweigh the evidence. As such, the court finds that Kerner's guilty finding was supported by "some evidence." To the extent Plaintiff asserts a due process claim based on the allegation that the guilty finding was not based on sufficient evidence, summary judgment should be granted in Defendants' favor.

### 5. Restitution

Plaintiff's claim regarding restitution is based on the allegation that his original sanction to *all* of the restitution was vacated, and he was subsequently sanctioned to only *split* restitution, but money was taken out of his prison account that reflects he was still being sanctioned for *all* restitution.

The Due Process Clause protects prisoners from being deprived of property without due process of law, *Wolff*, 418 U.S. at 556, and "[t]here is no question that [an inmate's] interest in the funds in his prison account is a protected property interest." *Shinault v. Hawks*, 782 F.3d 1053, 1057 (9th Cir. 2015) (en banc) (quotation marks and citation omitted).

Where an inmate alleges a deprivation of a property interest caused by the unauthorized negligent or intentional action of a prison official, he does not state a constitutional claim where the state provides an adequate post-deprivation remedy. *See Zinermon v. Brady*, 494 U.S. 113, 129-132 (1990); *Hudson v. Palmer*, 468 U.S. 517, 533 (1984).

Plaintiff's allegations are that there has been an *unauthorized*, intentional, or negligent deduction from his inmate account since the restitution sanction was for *split* restitution, but he is being assessed for *all* restitution.

Nevada provides a meaningful post deprivation remedy for the loss of personal property. *See* Nev. Rev. Stat. § 41.0322. Therefore, Defendants' are entitled to summary judgment insofar as Plaintiff's due process claim is based on the assertion that there has been an unauthorized negligent or intentional deduction from his prison account for the restitution sanction.

**D. Walsh**

Plaintiff's claim is essentially that Walsh denied his due process rights by refusing to properly process his disciplinary appeal which allowed the guilty finding and sanction to stand.

Defendants admit Walsh rejected Plaintiff's disciplinary appeal; however, she argues that the grievance was mistakenly rejected as a duplicate of grievance 45584 (Plaintiff's appeal of the original disciplinary finding). Walsh argues she did not personally participate in any alleged constitutional violation because her only role was in reviewing and mistakenly rejecting

1 Plaintiff's appeal, and she did so in her capacity as grievance coordinator, with no authority to

2 overturn the guilty finding and sanction.

3       This is not a case where a grievance responder was addressing an alleged constitutional

4 injury that already occurred and which he or she could take no action to remedy, in which case it

5 might be argued that the grievance responder did not personally participate in the alleged

6 constitutional violation.

7       Here, Plaintiff was following NDOC's own regulations, which required that he pursue an

8 appeal of the disciplinary action taken against him through NDOC's grievance process. He did

9 just that, and Walsh improperly rejected his disciplinary appeal as addressing the grievance

10 which had discussed the *original* violation of his due process rights. The grievance was clear that

11 it was raising due process issues about the *re-hearing* that took place in May 2018. Moreover,

12 after Walsh mistakenly rejected the appeal, Plaintiff filed a *second* grievance alerting Walsh

13 again that he was appealing the *re-hearing* from May 2018. Walsh rejected the second appeal on

14 the same basis, effectively precluding Plaintiff from seeking appellate review of the alleged due

15 process violations.

16       Walsh may be liable if there "is a sufficient causal connection between [her] wrongful

17 conduct and the [underling] constitutional violation." *Hansen v. Black*, 885 F.2d 642, 646 (9th

18 Cir. 1989). That causal connection can include "acquiescence in the constitutional deprivation of

19 which a complaint is made" or "conduct that showed a reckless or callous indifference to the

20 rights of others." *Lemire v. Cal. Dep't of Corr.*, 726 F.3d 1062, 1085 (9th Cir. 2013) (citations

21 and quotation marks omitted). "The requisite causal connection can be established by setting in

22 motion a series of acts by others, or by knowingly refusing to terminate a series of acts by others,

23 which the supervisor knew or should have known would cause others to inflict a constitutional

injury." *Id*. (citation omitted). A jury could conclude on these facts that Walsh should have known that her rejection of the disciplinary appeal grievance (at least the second time around) would make it so Plaintiff was unable to seek redress of the alleged due process violations.

Ultimately, Walsh's liability will depend on whether there jury finds there underlying violations of his due process rights at the re-hearing before Kerner were. Therefore, both Defendants' and Plaintiffs' motions for summary judgment should be denied as to the due process claims proceeding against Walsh.

**E. Qualified Immunity**

Finally, Defendants argue they are entitled to qualified immunity.

"Defendants are entitled to qualified immunity if (1) the alleged conduct did not violate a constitutional right or (2) that right was not clearly established at the time of the alleged violation." *Melnik*, 14 F.4th at 985 (citing *Wood v. Moss*, 572 U.S. 744, 757 (2014)).

If the facts are taken in the light most favorable to Plaintiff, a jury could conclude that Plaintiff's due process rights were violated.

Moreover, the law was clearly established that an inmate in a disciplinary proceeding must be able to review the evidence against him and call witnesses and present a defense absent legitimate penological reasons that dictate otherwise. *See Wolff*, 418 U.S. 539; *Melnik*, 14 F.4th 981.

Therefore, Defendants are not entitled to qualified immunity.

## IV. RECOMMENDATION

IT IS HEREBY RECOMMENDED that the District Judge enter an order:

(1) **DENYING** Plaintiff's motion for summary judgment (ECF No. 83)

20

(2) **GRANTING** Defendants' motion for summary judgment (ECF No. 90) insofar as Plaintiff claims the disciplinary finding was not based on "some evidence," and to the extent Plaintiff claims he was improperly assessed restitution payments, but otherwise **DENYING** Defendants' motion for summary judgment.

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of being served with a copy of the Report and Recommendation. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

Dated: September 20, 2023

_____
Craig S. Denney
United States Magistrate Judge